IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JOE COOPER, § | |
|     Petitioner § | |
| § | |
| VS. § | C.A. NO. C-12-174 |
| § | |
| RICK THALER, Director, § | |
| Texas Department of Criminal § | |
| Justice–Correctional Institutions Division§ | |
|     Respondent § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division, ("TDCJ-CID"), and currently is incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se*, petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 21, 2012 (D.E. 1).[1] Petitioner claims that his due process rights were violated in two separate disciplinary proceedings which resulted in the imposition of punishment.

Respondent filed a motion for summary judgment on August 20, 2012 to which petitioner responded on January 29, 2013 (D.E. 18, 38). For the reasons discussed more fully below, it is respectfully recommended that respondent's motion for summary

---

[1] Petitioner declared under penalty of perjury that he placed his petition in the prison mail system on May 21, 2012 and it is considered filed as of that date. Spotville v. Cain, 149 F.3d 374, 376 (5th Cir. 1998).

judgment be granted and petitioner's cause of action for habeas corpus relief be dismissed without prejudice in part and otherwise dismissed and denied on the merits.

## JURISDICTION

The actions about which petitioner complains occurred at the McConnell Unit in Beeville, Bee County, Texas and at the Gurney Unit in Anderson County, Texas. Petitioner was incarcerated at the McConnell Unit at the time he filed his petition. This Court has jurisdiction over his case. 28 U.S.C. § 2241(d); Wadsworth v. Johnson, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving three concurrent eight-year sentences for forgery (D.E. 1 at 2; Commitment Inquiry, D.E. 18-1 at 2-3). He does not complain about his holding convictions but challenges the results of two disciplinary hearings.

### A. Disciplinary Case Number 20120075861

In disciplinary case number 20120075861 petitioner, while incarcerated at the Gurney Unit, was accused and found guilty of threatening to inflict harm on an officer when he told her, "Talk to me like that again and see what happens." (Disp. Hrg. Recs.-61 at 1; D.E. 20-2 at 3). In the offense report, Officer Dazey reported that on November 11, 2011 she went into petitioner's dorm room and ordered him to get up and get the dorm's cleaning equipment. The petitioner told her that it was his day off and he was not going to do it. Dazey again told him to get up and get the equipment because he was the only "SSI" assigned to the shift and that he was only off duty if there were another "SSI"

2

available. Petitioner then told her, "Talk to me like that again and see what happens." Once again the officer ordered petitioner to get up and go to the back salleyport and he reluctantly complied. The officer felt threatened by petitioner's comment (Disp. Hrg. Recs.-61 at 2; D.E. 20-2 at 4).

In the preliminary investigation report, petitioner stated that he was off from work and that he requested some "brass" to come to the building to settle the matter. He also stated that he did not threaten the officer (Disp. Hrg. Recs.-61 at 3; D.E. 20-2 at 5). At the hearing petitioner testified that he was in a medicated state and sleeping when the officer woke him up and that he did make the statement (Disp. Hrg. Recs.-61 at 10; D.E. 20-2 at 12). A statement was submitted at a hearing in which another officer stated that as he was escorting petitioner to his physical, petitioner stated that when "that lady woke him up on his day off [he] almost slapped the shit out of her." (Disp. Hrg. Recs.-61 at 4; D.E. 20-2 at 6). The charging officer was not called to testify.

Petitioner was found guilty based on the charging officer's written report, the other officer's statement and petitioner's statement that he did make the comment. He was punished with 15 days in solitary confinement, the loss of 45 days of recreation and commissary privileges, a reduction in line class from L1 to L2 and the loss of 90 days of good time (Disp. Hrg. Recs.-61 at 1; D.E. 20-2 at 3).

Petitioner filed a Step 1 Grievance, number 20122049903, on November 21, 2011 in which he argued that officer Dazey had physically assaulted him when she woke him up by poking his ribs with an object and screaming at him. He said he was heavily

3

medicated and did not threaten her in any way (Disp. Grv. Recs.-61 at 1-2; D.E. 20-1 at 3-4).  Petitioner received a response on December 2, 2011, telling him that his grievance was investigated, no due process violations or procedural errors were revealed, a preponderance of the evidence supported the finding of guilt, punishment was within established guidelines and there was no evidence to warrant overturning the case (Disp. Grv. Recs.-61 at 2; D.E. 20-1 at 4).

Petitioner filed a Step 2 Grievance on January 17, 2012, again arguing that Dazey had assaulted him and abused her authority by using coercive tactics while he was using medication for his psychiatric condition (Disp. Grv. Recs. at 3-4; D.E 20-1 at 5-6).  On March 13, 2012 petitioner received a response telling him that his case had been reviewed, the charges were appropriate for the offense, the guilty verdict was supported by a preponderance of the evidence, all due process requirements were satisfied, the punishment assessed was within agency guidelines and that no further action was warranted (Disp. Grv. Recs.-61 at 4; D.E. 20-1 at 6).

**B. Disciplinary Case Number 20120188437**

In disciplinary case number 20120188437, petitioner, after he was moved to the McConnell Unit, was accused and found guilty of being in the 10 Building holding area on March 9, 2012 when he had no authority to be there.  In the offense report, M. Perez, the charging officer, stated that while working in the medical department she opened the gate to the holding area and petitioner entered.  She asked him for his lay-in and he told her he had already given it to her.  She then asked for his identification, checked the

4

medical lay-in list and discovered that petitioner was not on the lay-in list (Disp. Hrg. Recs.-37 at 1-2; D.E. 20-4 at 3-4).

During the investigation of the case petitioner stated that he thought he had a medical lay-in, but it actually was for the law library (Disp. Hrg. Recs.-37 at 7; D.E. 20-4 at 9). At the hearing petitioner said that he was on medication for his psychiatric issues. On the day he was outside the medical unit, he had two lay-ins. He made a mistake when he picked them up and incorrectly believed he had a lay-in to be in the medical unit at that time (Disp. Hrg. Recs.-37 at 1, 9; D.E. 20-4 at 3, 11). He was found guilty based on the charging officer's statement and was punished with the loss of 45 days of recreation and commissary privileges and a reduction in line class from L1 to L3 (Disp. Hrg. Recs.-37 at 1; D.E. 20-4 at 3).

Petitioner filed a Step 1 Grievance on March 16, 2012, stating that on the day he was out of place, he thought he had a lay-in for the infirmary, but when he was asked about it and checked, the lay-in was actually for the law library. The entrance to the medical unit and the law library are only five feet from one another. Petitioner said that he tried to show the charging officer that he had a lay-in for the library, but she ignored him. He asserted that the charging officer wrote him up either because she was racially motivated to do so, or out of retaliation for other grievances and a lawsuit he filed (Disp. Grv. Recs-37 at 1-2; D.E. 20-3 at 3-4). Petitioner received a response on April 13, 2012 telling him that the case was reviewed and there was sufficient evidence to uphold the finding that he was out of place (Disp. Grv. Recs.-37 at 2; D.E. 20-3 at 4). Petitioner filed

5

a Step 2 Grievance on April 20, 2012 arguing that he was simply mistaken about the lay-ins and that the charging officer was racially motivated to write him up for being out of place (Disp. Grv. Recs.-37 at 3; D.E. 20-3 at 5). Petitioner received a response telling him that his case was reviewed and his points of appeal were without merit, there was sufficient evidence to support a finding of guilt and the decision would stand as rendered. (Disp. Grv. Recs.-37 at 4; D.E. 20-3 at 6).

Petitioner filed this habeas action on May 21, 2012 in which he makes the following arguments: (1) Officer Dazey filed a false report with no evidence to support her accusations; (2) He received ineffective assistance from his counsel substitute; (3) He has been subjected to cruel and unusual punishment in that his eye glasses were destroyed at the Gurney Unit and he has been over-medicated; (4) He has been denied access to the courts and legal materials and thus has been unable to defend himself on the charges; (5) He requested a rehearing on the Gurney Unit disciplinary charge but was told that the time limit had expired, even though he was unable to appeal in a timely manner because of his transfer to the McConnell Unit and (6) Officer Perez wrote him up for being out of place because he had complained about some of her co-workers and also because of racial prejudice.

In his motion for summary judgment, respondent argues that petitioner did not fully exhaust his administrative remedies and also that his claims are without merit. Respondent concedes that petitioner's cause of action was timely filed and that the petition is not second or successive. In his response to the motion for summary judgment,

6

petitioner counters that all of his claims are exhausted and that he is entitled to habeas corpus relief.

## APPLICABLE LAW

### A. Habeas Corpus or 42 U.S.C. § 1983 Claim?

As an initial matter, some of the claims petitioner makes should be brought in a civil rights action pursuant to 42 U.S.C. § 1983. "Generally, § 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures." Carson v. Johnson, 112 F.3d 818, 820 (5th Cir. 1997)(citing Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't, 37 F.3d 166, 168 (5th Cir. 1994)). "A habeas petition, on the other hand, is the proper vehicle to seek release from custody." Carson, 112 F.3d at 820 (citing Pugh v. Parish of St. Tammany, 875 F.2d 436, 439 (5th Cir. 1989)). If a favorable determination would not automatically entitle an inmate to an accelerated release, the proper vehicle is a § 1983 suit. Carson, 112 F.3d at 820-821 (citing Orellana v. Kyle, 65 F.3d 29, 31 (5th Cir. 1995)).

Petitioner's claims that he was subjected to cruel and unusual punishment when he received inadequate medical care, that he was denied access to the courts, that he was not allowed to use the law library and that he has not been given adequate indigent mail supplies are all attacks on the conditions of his confinement or on prison procedures and should be brought in a civil rights action. In fact, petitioner has filed a civil rights action, C.A. 2:12cv242, entitled *Cooper v. Barber*, where he has raised some of these claims, and he can file a motion to supplement his complaint to add claims not already raised.

Therefore it is recommended that the claims be dismissed from this habeas action without prejudice. Petitioner is cautioned that he must exhaust administrative remedies and meet all applicable deadlines if he wishes to pursue these claims via a 42 U.S.C. § 1983 petition.

### B. Exhaustion and Procedural Bar

Respondent argues that petitioner did not properly exhaust all of his claims at the administrative level and because it is now too late for him to do so, the unexhausted claims are procedurally barred. Before a federal court can grant an application for writ of habeas corpus, an applicant must have exhausted the remedies available in the courts of the state. 28 U.S.C. § 2254(b)(1). "To exhaust available state remedies, a habeas petitioner must fairly apprise the highest court of his state of the federal rights which were allegedly violated." Shute v. State of Texas, 117 F.3d 233, 237 (5th Cir. 1997)(internal quotations omitted). But, because Texas state courts do not review claims of lost good time or other results of prison disciplinary proceedings, a petitioner is required to pursue his claims through the administrative appeals process rather than state court. Ex Parte Palomo, 759 S.W.2d 671, 674 (Tex. Crim.App. 1988); Ex parte Brager, 704 S.W.2d 46 (Tex. Crim. App. 1985). The exhaustion requirement is mandatory and the administrative grievance procedure must be completed before a prisoner can file a law suit in federal court. Underwood v. Wilson, 151 F.3d 292 (5th Cir. 1998).

In addition, a federal court is barred from reviewing a question of federal law decided by a state court if the decision of that court rests on a state law ground that is

independent and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 2554, 115 L.Ed.2d 640 (1991). In order to overcome the procedural bar, a petitioner must show either cause and prejudice for the error, or that failure to hear the claims would result in a miscarriage of justice. Sawyer v. Whitley, 505 U.S. 333, 338-339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992). In order to show a "miscarriage of justice," the petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995).

The Fifth Circuit has not addressed the applicability of the procedural bar to habeas cases involving prison disciplinary cases. However, the Seventh Circuit has held that the final reviewing authority in the prison grievance process is the administrative equivalent to the state's highest court and that habeas claims based on disciplinary cases could be procedurally defaulted in the absence of cause and prejudice. Moffat v. Broyles, 288 F.3d 978, 981-982 (7th Cir. 2002). At least one Texas district court has adopted the reasoning in a published opinion. Moffatt v. Director, 390 F.Supp.2d 560, 562-563 (E.D. Tex. 2005). In the absence of authority to the contrary, the reasoning of those cases will be applied here.

Respondent in this case argues that petitioner did not exhaust his administrative remedies in regard to his claims that his counsel substitute was ineffective. Respondent is correct. Petitioner did not address his ineffective assistance of counsel claim in the grievances he filed and if he were attempt to do so now, his grievance would be time-

barred.² Accordingly, his claim is unexhausted and procedurally barred.³ Respondent also argues that petitioner did not exhaust his claims regarding inadequate medical care or access to the courts or legal proceedings, but, as discussed above, these claims are dismissed without prejudice because they should be brought in a 42 U.S.C. § 1983 lawsuit.

### C. Due Process Rights

Regarding petitioner's remaining claims, in order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974)] and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532

---

²Prison regulations require a prisoner to seek administrative review of an adverse disciplinary action within 15 days of the initial decision, and if that appeal is denied, to file a Step 2 Appeal within 15 days. Offender Orientation Handbook (2004)(available at http://www.tdcj.state.tx.us/publications/cid/OffendOrientHbkNov04.pdf)(last viewed on April 8, 2011).

³Even if petition had exhausted this claim, he still has not stated a claim for habeas relief. Inmates "do not 'have a right to either retained or appointed counsel in disciplinary hearings.'" Baxter v. Palmigiano, 96 S.Ct. 1551, 1556, 425 U.S. 308, 315, 47 L.Ed.2d 810 (1976)(quoting Wolff, 418 U.S. at 570, 94 S.Ct. at 2981). If a petitioner does not have a right to counsel at a disciplinary hearing, he does not have a right to effective counsel.

> (1976)]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. (internal citations omitted). The Supreme Court held in Sandin that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 515 U.S. at 486, 115 S.Ct. at 2301. The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody. Id.

**1. Loss of Privileges and Reduction in Line Class Status**

To the extent petitioner is complaining about losing recreation and commissary privileges, he fails to state a basis for relief because such a loss does not pose an atypical or significant deprivation. See Madison v. Parker, 104 F.3d 765, 768 (45-day commissary and cell restrictions do not implicate due process concerns). Therefore he cannot state a claim for habeas relief based on loss of privileges.

Petitioner's Line Class status was reduced from L1 to L2 in case number 20120075861 and from L2 to L3 in case number 20120188437. Generally a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on the amount of time he is in custody. Even so, "such speculative,

collateral consequences do not create constitutionally protected liberty interests." <u>Luken v. Scott</u>, 71 F.3d 192 (5th Cir. 1995)(citing <u>Meachum v. Fano</u>, 427 U.S. 215, 229, n. 8, 96 S.Ct. 2532, 2540, n. 8, 49 L.Ed.2d 451 (1976)), <u>cert. denied sub nom. Luken v. Johnson</u>, 116 S.Ct. 1690 (1996). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999)(citing <u>Whitley v. Hunt</u>, 158 F.3d 882, 889 (5th Cir. 1998)). <u>See also</u> <u>Malchi v. Thaler</u>, 211 F.3d 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating).

Petitioner is not entitled to habeas corpus relief based on his line class status or on his loss of recreation privileges. Accordingly, summary judgment is entered for respondent on these claims.

**2. Loss of Good Time**

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. <u>Madison</u>, 104 F.3d at 768 (citing TEX. CODE CRIM. P. ANN. art. 42.18 § 2(2)). Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date. TEX. GOV'T CODE ANN. §508.147 (Vernon 2002). The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and

therefore have a liberty interest with respect to their good time credit. Teague v. Quarterman, 482 F.3d 769, 777 (5th Cir. 2007). Petitioner in this case is entitled to release to mandatory supervision (D.E. 1 at 5; D.E. 20 at 2-3).

The Supreme Court described the process due a prisoner accused of a disciplinary infraction in Wolff, 418 U.S. at 564, 94 S.Ct. at 2979: (1) He must receive written notice of the charges; (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals and (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision.

Petitioner lost the good time in the case where he was found guilty of threatening the officer. He received written notice of the charges and the hearing officer made a written record noting the evidence he relied on in finding petitioner guilty. Petitioner argues that the offense report was falsified and that there was insufficient evidence to support the finding that he was guilty.

Regarding the sufficiency of the evidence, it is not the job of the courts to assess the weight of the evidence when reviewing a prison disciplinary hearing, but only to determine whether the guilty finding has support of some facts or any evidence at all. Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001). As long as a hearing officer's decision is supported by some evidence and the requirements of Wolff have been met, the decision cannot be disturbed on judicial review. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the

disciplinary board." Superintendent Mass. Corr. Institution v. Hill, 472 U.S. 445, 455-456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985); Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995).

In this case, on the audio recording of the hearing, petitioner stated that he made the statement to the officer, but said he was medicated and that she startled him when she woke him up. His testimony, plus the report of the charging officer and the report from the witness who quoted petitioner as saying he almost slapped the charging officer, is "some evidence" that supports the finding of guilt.

Petitioner was provided the process he was due under Wolff. Accordingly, summary judgment is entered for respondent.

### D. Retaliatory or Racial Animus

Petitioner also complains that the disciplinary charges related to his being out of place were brought against him because of his race and also out of retaliation for his filing earlier grievances and court actions. The bringing of disciplinary charges against an inmate, if motivated by retaliation for the exercise of a constitutionally protected right, is actionable, even if the charges, when brought for a different reason, might have been legitimate. Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995). Similarly, disciplinary charges may not be brought against an inmate and he may not be subjected to harsher punishment for infractions based on race. Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995).

In order to make out a claim of retaliation or violation of the equal protection clause based on disciplinary proceedings, an inmate must be prepared to establish that but for the retaliatory motive or racial animus, the filing of the disciplinary charges would not have happened. Smith, 60 F.3d at 1166. Mere conclusory allegations of retaliation or racial bias will not withstand a motion for summary judgment. Instead, the inmate must produce direct evidence of a retaliatory motive or racial bias. Id. Petitioner in this case has done no more than offer his conclusory assertion that his disciplinary conviction was the result of retaliation and racial bias. Accordingly it is recommended that his claim that the disciplinary charges were brought out of either retaliation or racial animus be denied.

### E. Motion for Reconsideration

On February 6, 2013, petitioner filed a motion for reconsideration of the order denying his request for yet more time to file a response to respondent's motion for summary judgment (D.E. 39). The records provided by respondent confirm petitioner has had ample time in the law library to research his response. Petitioner's six-page motion, complete with numerous citations, further demonstrates that petitioner has adequate access to the law library and/or to help from inmates who do. Finally, as indicated in the order denying petitioner another lengthy extension of time to file his response, the law in this area is settled, and petitioner cannot and has not demonstrated that further research would reveal case or statutory law which would change the outcome of this matter.

### F.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that some of his claims be dismissed procedurally and some denied on the merits. Reasonable jurists would not find debatable or wrong the decisions that petitioner failed to exhaust his administrative remedies on all his claims, that some of his claims should be brought in a civil rights action, that he received due process and that the result of the disciplinary hearing was supported by some evidence. The law in these areas is settled and not subject to debate. Petitioner has not made the necessary showing for issuance of a COA.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that respondent's motion for summary judgment (D.E. 18) be granted. Petitioner's claims that he was subjected to cruel and unusual punishment when he received inadequate medical care, that he was denied access to the courts, that he was not allowed to use the law library and that he has not been given adequate indigent mail supplies should be dismissed without prejudice for refiling in a civil rights action. His claim that he received ineffective assistance from his counsel substitute should be denied because it is unexhausted, procedurally barred and

without merit. Petitioner's remaining claims brought pursuant to 28 U.S.C. § 2254 should be denied because he has failed to show that he is entitled to habeas relief. Finally, it is recommended that petitioner's motion for reconsideration (D.E. 39) be denied, and that any request for a Certificate of Appealability (COA) be denied.

Respectfully submitted this 7th day of February, 2013..

                                              B. JANICE ELLINGTON
                                          UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996)(en banc).